We'll call the next case. This is Warner v. Hillsborough County Clerk of Courts, case number 24-10748. I see that we're splitting our time here, Council, so you go ahead with your presentation, and then we'll hear from your co-council, and then we'll move on to opposing council, okay? Your Honor, and may it please the Court, good morning. I'm Megan Tinkell with Baker Botts here representing Appellant Blake Warner. I'll be arguing the procedural due process portion of the argument, and my colleague Matthew Erickson will be arguing the takings argument. Warner brought both facial and as-applied due process challenges below. I would like to start with the facial challenge because this case falls squarely within Mullane v. Central Hanover. Due process requires that prior to a deprivation of property, the state must provide notice reasonably calculated in all circumstances to apprise an interested party. On a facial challenge, though, you're required to show that in all circumstances that there would be a violation, right? Your Honor, that is true. I'm sorry, that was my first premise question, but I know that's true, so let's get to the second part. If you read Mullane, which you just started with, it says, in the case of persons missing or unknown, employment of an indirect or even probably means of notification is all that the situation permits and creates no constitutional bar to a final decree for closing their rights. And Mennonite, the court reiterated that, quote, that you have to do more of the constructive notice, quote, unless the mortgagee, in that case it was a mortgage, is not reasonably identifiable. That would seem to indicate that at least in the context of a person who's reasonably unidentifiable or missing or unknown, that constructive notice as consistent with the statute is sufficient. How do you meet a facial challenge under those circumstances? Sure, Your Honor. Well, the statute at issue section 116.21 requires publication notice as the first and only resort. There's no... I agree, that may be wrong as to your client, which is why I'm very interested in your as-applied challenge. But in terms of facial, we have to assume that there are people who are missing, unknown, or reasonably identifiable. That isn't like some crazy hypothetical. That actually is a very common situation. And for those folks, constructive notice seems to be perfectly fine under the Supreme Court case law. I just, I have a hard time seeing how that could be a facially... The statute could be facially unconstitutional, or at least as to those three categories of folks, that it would be Okay. Good advice from my colleague. Turning to the as-applied challenge, the clerk faced with the enticing possibility of depositing $3,600 into the county fund for public use attempted only two notification attempts. First, after receiving 13 return to sender notifications during the pendency of the eviction case, she sent a 14th letter ostensibly to notify Mr. Warner of the pendency of... I want to talk about the fact that your client had prior to this, and it was undisputed, had given the clerk's office his e-filing information, correct? The clerk's office had that information. They could have notified him through the e-filing system. They had his e-mail. Yes, absolutely. And that was after they sent 13 different letters that went unanswered? Yes, to the Fremont Avenue address, and they sent an additional letter to the Fremont Avenue. I just want to confirm a couple things. The notice that was sent by mail advised your client that the funds, if they were not retrieved by a certain date, would go to the state fund, correct? Yes, Your Honor. And every notice prior to the taking of the funds either said that the funds would go to the state fund or cited the unclaimed property statute, which is a custodial... Correct. But the particular fund, the state fund, has a requirement. The time to be able to retrieve from that fund is longer than the fund is going to the clerk's. Yes, Your Honor. In Hillsborough County. In perpetuity. Correct. But in Hillsborough County, it is not. The county fund is not. The county takes title. And your client never received notice that it was going to the county fund? Never. Correct. Okay, I just wanted to confirm that. Okay, thank you. The newspaper gave notice though. The question is whether that's sufficient, right? Right. All right. Regarding the as-applied, so here's the two arguments I hear your opposing counsel given, and I'd like for you to address them. One is, hey, there's a statute, and the statute gives everybody notice of exactly what's happening here. So no one should be surprised. And he uses Texaco as sort of the basis of that. Other case law, but Texaco seems to be the basis for that. Why don't you address that one first? Yes, absolutely. It is true that statutes give general notice to people. But if that was always the case, that a statute was enough notice of a deprivation, then we might as well not have a due process clause. Why is that? Well, I mean, because Moulin and a lot of these other cases are not statute-based. They're sort of specific, there's litigation specific. And so there, obviously, it requires a little bit more. But where there's a general statute, which says, hey, to everybody in the world, within five years, this is going to happen. And if this doesn't happen in five years, then this other thing is going to happen. Yes, and that is acceptable in some circumstances. Why not here? Because in Texaco, the court stressed the importance of the statute being self-executing. And that's important because the interested party deserves specific notice, not just general notice. If you have a self-executing statute, you know, in 10 years, my property will automatically issue to the state. So you're saying that it would have been better here if the statute said, clerk will, in all circumstances, take all money that's left over after the January of the prior year that's in this fund after notice had been given through the newspaper, that that would have been sufficient? I'm not sure that that would have been sufficient, but that would have been a very different case. This statute actually says the clerk in its discretion, there's discretion there, can make a list and deposit these funds in the fine and forfeiture fund. And when there's discretion or a decision about whether abandonment has occurred, then those are the situations where notice and an opportunity to be heard are are necessary. And even in Texaco, the court remarked that before the state could take final, could take final title to the mineral rights or the owner could take final title to the mineral rights, there would be a proceeding for quiet title. And in that proceeding, the interested property owner would have a right to notice and an opportunity to be heard. The other argument your opposing counsel makes is that even Mullane and Jones seem to suggest that the court doesn't have, sorry, the clerk doesn't have to like go searching around or rooting around every government record or every public record to try to find the address that here they had an address, they sent it to that address. Your client never updated the address. And that is sufficient to meet sort of the Mullane-Jones line of having to send notice. Why are you asking them to do something that's maybe reasonable or unreasonable under that line of cases? So it's true that the state is not required to undertake an open-ended public record search. Here, the county had an address, additional address for Mr. Warner in its own records. And the easiest way for the clerk to give Mr. Notice or Mr. Warner notice in this case would have been simply to check the box when filing notices to the docket to serve his e-file account, which is standard practice in most courts. Thank you, counsel. I'm sorry. Sorry. Yes. I just wanted to confirm because my understanding was that his e-file account had not just his updated his email address, but it also had a new mailing address, which was the Kelly Road address. Yes. Right. And that was he registered that in April of 2018, which was way before the clerk's office sent these letters. Yes. Thank you, counsel. Your Honor, may it please the court. Defendants concede that they took $3,600 out of the court registry fund. They concede that that money belonged to Mr. Warner and they concede that they gave no just compensation, yet they still argue that there's no takings clause issue here for two reasons. Well, right. So let's get to those two reasons. They really argue under the under Texaco and Venice that where there's an abandonment, it's there doesn't need to be compensation. The property is now the state's. Why is that wrong? That is wrong because abandonment is a high bar and the court has never said exactly how many years and it's in Texaco state, the underlying sort of common law principles that that a property rights are functions of the state and be the state can make those property rights contingent and and define abandonment. And so where it's done that it may be wrong. It may be a due process violation for what it did, but how does it taking where the property has been by law abandoned? So I think you need to read not just Texaco, but read Texaco in light of Tyler versus Hennepin County, which cites Texaco and clarify some ambiguities in that case. And actually, I would like and there's a couple of. Ways that it's distinguishable, but first of all, I'd like to quote directly from Tyler versus Hennepin County quote. It is the owner's failure to make any use of the property and for a lengthy period of time that causes the lapse of the property right and quote. And in that case, the court said that while states have the have the right to define the right, they do not have infinite latitude to do so. Otherwise, there's no doubt about that. I mean, if if if we if it was you don't use it for a day, we take it. I think we we would have be we have a different discussion, but this was 21 months at the earliest under the statute. And I think probably if we looked at your client situation or had it specific, it's even longer than that. He really had it from I think about 2000 and they didn't take the property until what September of 2022. So over two years, that's how long the money was in the fund. But I would disagree that that's the right period of time to start looking at this because in Texaco or excuse me in Tyler versus Hennepin County, the court said essentially the clock starts when you're no longer using the property, but you can't say that the property wasn't being used that it was sitting dormant. The moment that Mr. Warner put it into any say or testify that that he was sort of treating it as the bank. I mean, he just said he said he's like, I knew it was there and it was safe and I'm just going to let it sit there. So I'm not sure that that amounts to non-use. Well, it may not, but that is what he said, right? I believe that's right. You're right. But he was still using the money. He was using it to stave off an eviction and it wasn't the money was still at issue. At that point, there was a settlement. I mean, you're right at the beginning. That certainly was a point. I don't think we can use the when the lawsuits filed or when he deposits it, but at the point at which there's the settlement, hey, I'll drop the counterclaim. You let me get the money back. That's the point at which you either take the money or you leave it. And if you just leave $3,600 sort of sitting somewhere, if you just left it in your front yard, that would be considered abandonment after two years. Why is it not considered abandonment if you leave it in a non-bank someone else's fund? So I think at the very least, we've just established that the three year period of time that I agree, it's not three years. It's probably a little over two. Okay. It's not abandonment, your honor, as a matter of law until the case is dismissed for want of prosecution. The court had no notice of the settlement. And so I don't think you couldn't have, I mean, my understanding of when you put something in the registry of the court, which is, this is what this was, right? It was a registry of the court for purposes of rents. You as the lessee cannot just go in and say to the court registry, hey, give me back the money. And let me take it out of the court registry without an order from the court saying that you can have these monies back. That's right, your honor. That doesn't mean that Mr. Warner didn't have a property interest in the money. And Webb's Fabulous Pharmacies is a really good case on this point. In fact, deals specifically with an interpleader fund, which is rather- There's no doubt he has a property interest in the money. I don't doubt it. I don't know about anybody else, but I know I don't doubt it. But I think that works to your disadvantage. It works to your advantage on the due process claim. I'm not sure it does on the takings claim because that still doesn't answer the question of at some point, the state is allowed to define at the point at which something becomes abandoned where no one claims it, because it just sits there. And I just don't see how that could be a taking. It may be a substantive due process problem for the state defining it at that early level. It may be a procedural due process claim. But I'm having trouble seeing it as a taking where the state defines it as no longer someone else's property. How could it be taken at that point? So I see my time has expired. You can answer my question. To respond. That is the same argument that was made in Tyler versus Hennepin County. So I just urge you to look carefully at that argument. The state law considered property abandoned if you didn't pay your property taxes. And in fact, there it had been five years and the court still said, no, that's not abandonment. It's still being used. Thank you. Good morning and may it please the court. My name is Jason Margolin for the appellee, the clerk of the circuit court and controller for Hillsborough County, Florida. The clerk asked the court to affirm the district court's entry of summary judgment in favor of the clerk. Mr. Warner, the appellant has failed to establish the basis for reversal or for striking down Florida law. I'd like to talk a little bit about the facial challenge. And I realize that perhaps that might not be the strongest argument. But if we do look at Moulin and then Jones, which echoed a lot of Moulin, the Supreme court was very clear that the steps taken to notify someone have to be reasonably related to the goal of contacting the person. And the court specifically says under all circumstances. So how does a statute that only requires notice be given one time in July to one publication satisfy due process on its face? Your Honor, first I would point out this is a case involving a litigation participant. So it is distinguishable from Moulin and some of the cases like Jones and Flowers and others that have relied on it, where we're trying to find people out in the void or unknown. There's a duty to monitor the docket and be involved in the case. And when the money goes unclaimed, the statute provides for notice by public. That's an interesting argument that you're making because he is a litigant and your client had the information of where this person was because in the e-filing system, it had his email and it also had a new address from him from 2018. Want to be clear on a couple of things. First, yes, it is possible to have sent an email. We acknowledge that. I do want to be clear that at the time, the rules did not require the clerk to send an email. I think it's Florida Rule of Judicial Administration and Procedure 2.516. I believe that's changing in July, but at the pertinent time, it did not require a clerk to send an email. I also want to be clear that the Florida- But if the clerk had wanted to ensure that Mr. Warner were notified of this taking, assuming we agree that that's what happened, why wouldn't you just send an email? Exhaust all available means that the clerk had at their disposal. The facts would be better for us if an email had been sent, but that does not mean that it is an unconstitutional violation of due process to have not sent an email. Let me ask you because this is a Florida Supreme Court case called Delta Property versus Profile. Now, it deals with a tax sale. But in this case, the clerk's office sent a notice of the tax sale to an incorrect address. And the Florida Supreme Court specifically said the clerk had a duty to take additional reasonable steps to attempt to provide notice to the legal title holder before selling the property. The clerk did not make any additional effort to locate Delta after the certified mail was returned undelivered because the clerk's office did not take any additional reasonable steps to notify the property owner after it learned about the attempt to provide notice was unsuccessful. It was not entitled to prevail on the claim to declare the tax deed valid. I mean, here you have a situation where Mr. Warner did what he was supposed to do as litigant. He updated his e-filing. He had the email. He had a new address. And I understand that under the statute, you had to just do publication, but you put publication in a newspaper for Spanish speakers. How is that even constitutional? A few clarifications. First, Your Honor, Mr. Warner had not done what he was supposed to do. He had not filed a change of address under the clerk's procedures, the local court's administrative rules to provide them with a new address. The e-portal is separate. That's maintained by the state. What the clerk of the court has is its electronic system is different. It's called the hover system. And that the litigation participant is required to file a notice of change of address form, which Mr. Warner did not do. He did it the first time he moved. So he knew about it. He knew he could do it. But then he moved again and did not do it. So I want to clarify that. And then, Mr. Warner has repeatedly referred to La Gaceta as a Spanish-speaking paper, but there is no challenge on appeal that the paper met the statutory requirements for a newspaper. Well, I mean, it is a publication. If that's the low bar that the statute, which again, I think could be problematic, requires, then yes. What's the criteria to decide which publication you're going to use? Because I think the language component is important. Under the Florida Constitution, is not English the official language of the state of Florida? Yes, Your Honor. And the paper is in English an equal component. So again, I know that's not an issue on appeal. That was raised below. And the court found it did satisfy the statutory requirements. The statutory requirements is rather low. I think it's 25. What's the criteria for deciding which publication, because the statute only requires one, that the clerk used to decide that out of all of the publications available, this would be the one to notify Mr. Warner that he was about to lose his money? The statute requires, I think, that it reach at least 10% of the households, be 25% in English. The statute has evolved during the litigation. I understand that. What is the criteria that the clerk's office used to decide of all of the publications at its disposal, this is the one that it was going to use? I don't believe that's in the record. But my understanding is there was a public bidding process. I don't want to go too far outside the record, but I do want to try and answer your question. So I guess SETA is one of the papers, the publications that the county uses regularly. Yes, Your Honor. I also want to point out to answer Judge Lagoa's question earlier. The fact that publication occurred is really one of the additional steps contemplated when you have mail coming back unreturned. So Mr. Warner had raised, you can't just send a 14th letter. That's true. You have to do something more. This is, I mean, this is 20, I mean, it's 2025 now, but in 2022, who is reading papers? Nobody is reading newspapers. I mean, even the Daily Business Review is online now. It's not even published anymore. Your Honor, that's an excellent point because the statutes, and again, it's not this statute, but it's a statute Mr. Warner did not challenge, requires that the newspaper be posted online same day, freely available and searchable so that it's visible online. It's also required to be posted to a central repository for the state of Florida for all legal notices. That's, I believe it's floridalegalnotices.com. Right. But Mulane says under all circumstances. So again, I'm not asking you to go down the rabbit hole of all of the different criteria considered, but what would make the county believe that Mr. Warner would review this particular publication under his unique circumstances? Well, the case law tells us actual notice is not required. And when you're talking about due process, it is reasonably calculated. So they are allowed to select the paper that has a minimum distribution in the county. And it's not required that someone actually be a newspaper reader. Again, there is online publication required.  But the requirement is that notice is given that the information is out there in the public square and that it is reasonable to believe that Mr. Warner would have access or otherwise reasonably calculated to reach the interested party, the property owner, right? Correct. So the question is, how is it reasonably calculated to reach the property owner? Your Honor, there's a history that publication is one way to reach persons that are. Perhaps in like 1960 or like 1980 when that was a thing. Correct, Your Honor. It has a historical legacy. I acknowledge it has been updated to require the online posting that I mentioned in. Right. And that's why Justice Alito in Taylor versus Yee specifically said there was a denial of cert only because it was a procedurally messy case. But he said this trend of shortening periods with minimal notification procedures raises important due process concerns as advances in technology makes it easier and easier to identify and locate property owners. Many states appear to be doing less and less to meet their constitutional obligation to provide adequate notice before taking private property. And it's that language in Taylor that makes me consider the facial challenge that's been brought here as well. So maybe you can tie it all together. So here the clerk was relying on the information that Mr. Warner had provided to the clerk under the local rules for the court, which was to update his last address and provide it. And it sent out the letters. When they were returned, the clerk followed the statutory requirements in public. Did the clerk not have access to the e-filing system that I know it's not pertains to the clerks, but you're saying that you don't have access to the one that the state has? Your Honor, I'm acknowledging an email could have been sent. I cannot dispute that. I just wanted to clarify that if Mr. Warner had put in a mailing address in there, which I believe was brought out in his opening argument, that that address is in a separate place and that's not what he's supposed to file with the clerk of the court, my client. So I wanted to make that distinction. More could always be done. Again, due process is about a floor and what's the minimum that's required. We obviously cite the Texaco case. Judge Luck, you brought that up in the prior argument. They, I will say though, your opposing counsel makes a good point that the statute here is not a mandatory statute. It is a discretionary statute. The first line says the clerk may, and then within their discretion, do X, Y, and Z. In other words, to even get into the newspaper, the clerk has to decide, yeah, I'm going to put this one in and this one not. Now in function, it may be that the clerk just dumps it all in there. But I think that does, once you add in clerk discretion, then there is an availability to be able to appeal to the clerk to, hey, don't take my money. And when you do that, then that would seem to require some sort of notice that actually is going to get to the person. I'm not sure there is discretion in the statute. And I want to be clear, the last sentence. So here's how I read it. I know what you're saying. So I read the statute of, to get into the newspaper, we're going to give you discretion. But once notice has been given in the newspaper, then the money has to be sweeped in. It must. That's the second last sentence of that first subsection you're reading. But the first to even get in the newspaper, in other words, to be on the list that's noticed, I think in July, so that notice in July is a discretionary call. And then once no one claims the money, then in September, those that were notified, it must be sweeped into the fund, right? I think that's a possible reading, but it's unclear to me whether the discretion relates to whether it's the fine and forfeiture fund established by the county or by the state. There are also two other things, differences in Texaco that intrigue me. One is that the court was pretty clear about the timing. Texaco was a 20-year statute. I mean, that's a true adverse possession, a true sort of consistent, traditional adverse possession. Here, two years seems to be a very short amount of time. And I think if you're doing like a Matthews versus Eldridge balance, that has to come into it, doesn't it? A few things on the timeline. And first, let me just say we regularly hold litigation participants to short time periods with 30 days to file an appeal. But this isn't that. I know you want to make it that, but at the point at which it's dismissed and at the point of what the statute comes into play, and that's really what we're talking about here, it's only 20, and I think you're right. It's 21 months or so. It's only 21 months we're talking about. I think due process would be satisfied if you had a statute that said after your case is dismissed, you have one year to claim the money. And if you don't, it's automatically forfeited. I think that would be sufficient notice if the statute's published under Texaco, the citizenry have an opportunity to know about it and there's some sort of grace period. But if that was on the books, allowing a litigation participant one year after their case is forfeited, I think that would satisfy due process. I think there's also a difference between property interests, which have a historical tradition of abandonment and cash, which does not. I mean, Texaco is very clear. It's the only mineral rights, which have a long, long common law history. I mean, going way back into an old England. We're talking about cash here. I mean, there's not like a long tradition of forfeiting and abandoning cash. This isn't even like stocks or grandma's jewelry that's been sitting in a safe deposit box for a long time and no one's claimed. This is just money sitting in the court registry. That you get to keep the interest, correct? Your Honor, that... The interest doesn't go back to the... If Mr. Warner wouldn't have gotten the interest, correct? Correct. That's why it's sort of outrageous that the state and the county can say like, well, 30 days, it's been sitting here too long. You're getting to keep the interest. You sweep the interest from all those accounts in the court registry. But Your Honor, this case is very unusual for a litigation participant to put the money in the court and... They're required to put the money in the court because it was an eviction. It was a tenant and landlord dispute, correct? That happens all the time in all the counties in the state of Florida, right? Correct, Your Honor, but... Because in order for you to be able to litigate an eviction case, whether you're a restaurant or you're an apartment owner or an apartment renter, you have to put the money into the court registry. You have no other... But I mean, that's what you're required to do. You can't have a lawyer put in the trust fund for them, correct?  And then he moves out in June of 2018. And at that time, he's not making a claim for the money. There's a hearing in October 2018, where there's a hearing in the court orally determines it's going to go to the landlord. And then nothing happens officially in the record with respect to the property. Now, Mr. Warner alleges, and we do not dispute, that he negotiated some sort of oral agreement with his landlord to get the money. But he doesn't document it in any way that we're aware of. He doesn't file anything with the court to let the court know of this change in ruling, essentially, or what should be the change in ruling. And he does nothing. He lets the case be dismissed. He lets it sit there without any documentation. I see my time has expired. But if I may- I think we're familiar with the record. But thank you so much, counsel. Thank you, Your Honor. Counsel, you have two minutes. Your Honor, may it please the court, I would like to focus on two main issues, starting with the fact that this statute is indeed discretionary on the point of the county. First of all, if you read the statute, it is, in my opinion, it's clear that the county has discretion whether or not to even initiate this process. But the second way that you can tell it's discretionary is the fact that these notices all referenced different statutory regimes. There's the custodial, the state fund, the custodial fund, where you can claim it indefinitely. And there's the county forfeiture fund, where it's forever barred. So at a minimum, the clerk had a amount of discretion as to which fund that they were going to put it into. And Mr. Warner had a right to be notified before the clerk decided to forever bar his funds. He had no way, even if he had happened to read the newspaper, to know that he was about to lose his funds. He had every reason to believe that he would have an indefinite opportunity, not to get the interest on the money, but to be able to get the promise. I'm sorry, maybe I missed that part about why it was reasonable for him to believe he had an indefinite right to access money. I mean, I think the abandonment or forfeiture argument is kind of strong here. So starting with the reason why he had every reason to believe he had an indefinite amount of time, the notice said that the money was going to be paid into the state fund. If that happened, he could have made a claim at the state fund at any amount of time. He was never notified that they were going to use this statute, which would forever bar his access to the funds. And that is in perpetuity. You can go when you when you have notice. Yes, Your Honor, even your heirs can. And the second point I want to talk about is the second point that you just referenced, Judge Abudu, which is abandonment. Maybe in a colloquial sense, we would say after a year, property is abandoned. But at common law, personal property was not abandoned and was kept for a long time. There's an amicus brief, such a really useful law review article that I urge you to look at, which talks about the common law here. Thank you. Thank you both. We're going to move on to our next case.